```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
SECURITIES AND EXCHANGE COMMISSION,  :
                                     :           12 Civ. 8676 (JSR)
         Plaintiff,                  :
                                     :           MEMORANDUM
         -v-                         :
                                     :
THOMAS C. CONRADT, DAVID J.          :
WEISHAUS, and TRENT MARTIN,          :
                                     :
         Defendants.                 :
------------------------------------x
```


JED S. RAKOFF, U.S.D.J.

Plaintiff Securities and Exchange Commission ("SEC") moves for summary judgment against Defendant David J. Weishaus.[1] The SEC alleges that in May 2009, co-defendant Trent Martin learned material nonpublic information about IBM's pending acquisition of SSPS, Inc. from a close friend, Michael Dallas, who was working on the acquisition as an associate at a New York law firm (the "Law Firm"). Martin then purchased SSPS securities on the basis of that information, and also tipped his roommate, Thomas Conradt, who also illegally traded in SSPS securities. Conradt in turn then tipped defendant Weishaus, who also traded on that information.

On summary judgment, the Court is bound to "constru[e] the evidence in the light most favorable to the nonmoving party and draw[] all reasonable inferences in that party's favor." *Scottsdale Ins. Co. v. R.I. Pools Inc.*, 710 F.3d 488, 491 (2d Cir. 2013). After full briefing, the Court heard oral argument on Thursday October 24,

---

[1] Following their guilty pleas in parallel criminal proceedings, the two other defendants settled with the SEC.

2013, and issued a "bottom line" Order on November 4, 2013 denying the SEC's motion. This Memorandum explains the reasons for that ruling.

For purposes of this motion, the critical issue is the nature of Martin and Dallas's relationship: that is, whether a relationship of trust and confidence existed between them. While Weishaus disputes that such a relationship existed, Weishaus concedes that Martin and Dallas, two single young professionals with common interests living in a foreign country far from home, quickly became close friends following their introduction in October 2008. Plaintiff's Rule 56.1 Statement ("Pls.' 56.1") ¶ 15; Defendant's Response to Plaintiff's Rule 56.1 Statement ("Def.'s Response") ¶ 15. From December 2, 2008, though the end of May 2009 (when Martin is alleged to have appropriated the inside information), the two exchanged hundreds of emails. Pls.' 56.1 ¶¶ 19; Def.'s Response ¶ 19. However, there is also evidence that the two would sometimes not see each other for two months at a time, and not talk by phone for three weeks or email for two weeks. Declaration of Catherine E. Pappas dated 09/17/2013 ("Pappas Decl.") Ex. 4 at 23-24.

Martin and Dallas shared various bits of professional information during this period. Both parties agree that Martin and Dallas regularly discussed topics such as supervisors, work schedules, and compensation. Pls.' 56.1 ¶¶ 25; Def.'s Response ¶ 25. However, while there is also evidence that on at least one occasion, Martin showed Dallas a work-email written by Martin, Pls.' 56.1 ¶

2

21, Weishaus disputes the claimed internal, nonpublic nature of the email. Def.'s Response ¶ 21. Plaintiff also alleges, and defendant disputes, that Dallas told Martin about a bond transaction he was working on, the details of which were allegedly non-public and confidential. Pls.' 56.1 ¶ 23; Def.'s Response ¶ 23. More generally, plaintiff alleges that Dallas and Martin discussed Dallas's work at the law firm, including discussions of what he did as an associate working in the business and transactional groups at a large law firm, transactions on which he had worked or was working, clients for whom his practice group worked, his workload, and work issues as they arose. Pls.' 56.1 ¶ 22. Defendant, however, disputes that any nonpublic transaction details or information regarding client identity was shared, noting that Dallas testified that he did not recall ever sharing any confidential "deal" data with Martin other than the SPSS acquisition. Def.'s Response ¶ 22; Pappas Decl. Ex. 4 at 35-36.

    Martin and Dallas also shared details of a more personal nature. For instance, Martin shared information with Dallas regarding the illness of a family member in Australia. Pls.' 56.1 ¶ 26; Def.'s Response ¶ 26. In early May 2009, Martin sought Dallas's advice regarding a friend's legal dispute over a non-compete agreement, revealing detailed underlying facts and circumstances. Pls.' 56.1 ¶ 27; Def.'s Response ¶ 27. In addition, in June 2009 (after the alleged tip), Martin informed Dallas about his arrest for a late-night altercation, expressing concern that a criminal charge

3

might affect Martin's ability to stay in the United States. Pls.' 56.1 ¶ 28; Def.'s Response ¶ 28. Finally, plaintiff alleges that Martin and Dallas communicated about work in the context of social schedules; for example on May 14, 2009, Dallas informed Martin that he was just assigned to a new potentially hostile deal, and thus that Martin might have to entertain Dallas's visiting friend. Pls.' 56.1 ¶ 24; Def.'s Response ¶ 24. Defendant does not dispute this communication, but disputes plaintiff's characterization that any confidential, non-public material was shared. Def.'s Response ¶ 24.

On May 26, 2009, after working for about eight months at the Law Firm and about four months in the Mergers & Acquisitions Practice Group, Dallas was assigned to work on the IMB-SSPS transaction. Pls.' 56.1 ¶ 6; Def.'s Response ¶ 6. Dallas understood that this assignment had significant implications for his career – the client, IBM, was one of the firm's largest, the work was very demanding, and poor performance could put his job in jeopardy. Pls.' 56.1 ¶ 33; Def.'s Response ¶ 33. Against that backdrop, Dallas met Martin for lunch. Pls.' 56.1 ¶ 35; Def.'s Response ¶ 35. During that lunch, in conveying the importance and magnitude of the assignment, Dallas revealed material nonpublic information about the SSPS acquisition, including the identities of the target and acquiring companies and the anticipated transaction price. Pls.' 56.1 ¶ 36; Def.'s Response ¶ 36. Dallas did not discuss this information with anyone else outside the Law Firm. Pls.' 56.1 ¶ 38; Def.'s Response ¶ 38.

4

Beginning on June 3, 2009, Martin began trading on the basis of the inside information tipped to him by Dallas. Pls.' 56.1 ¶ 41; Def.'s Response ¶ 41. Martin then tipped it to Conradt, Martin's friend and roommate, Pls.' 56.1 ¶ 44; Def.'s Response ¶ 44, who then in turn tipped the inside information to his friend Weishaus. Pls.' 56.1 ¶ 47; Def.'s Response ¶ 47. On the morning of June 24, 2009, after a June 23, 2009 late night telephone call with Conradt, Weishaus purchased 50 September SPSS call options, and between June 25 and June 29, 2009, he purchased a total of 50 July 35 SPSS call options. *Id*. Brokerage records reflect that Weishaus had not traded in SSPS securities before these trades. Pls.' 56.1 ¶ 58; Def.'s Response ¶ 58.

On July 27, 2009, the last trading day prior to the announcement, the closing price of SPSS stock was $35.09. Pls.' 56.1 ¶ 13; Def.'s Response ¶ 13. On July 28, 2009, the day of the announcement, SPSS's stock closed at $49.45 per share on heavy volume, an increase of 40.9% from the previous day's closing price. Pls.' 56.1 ¶ 14; Def.'s Response ¶ 14. Over the two months following the announcement, Weishaus sold all of his SPSS holdings for realized gains in the amount of $127,485. Pls.' 56.1 ¶ 57; Def.'s Response ¶ 57.

For purposes of this motion, Weishaus does not dispute that he traded on the basis of the information received from Conradt, but he maintains that the SEC has failed to establish beyond reasonable dispute that the tip from Martin to Conradt (who in turn tipped

5

Weishaus) constituted a breach by Martin of a duty of trust and confidence that Martin owed to Dallas. This is relevant because, under the SEC's theory of liability in their case, Weishaus knew that his immediate tipper, Conradt, was getting the information from Martin. Therefore, if Martin did not breach any duty to Dallas in disclosing the information to Conradt, Weishaus would not be liable.

Rule 10(b)(5)-(2)(b)(2), on which the SEC here relies in this respect provides that liability attaches:

> "[w]henever the person communicating the material nonpublic information and the person to whom it is communicated have a history, pattern, or practice of sharing confidences, such that the recipient of the information knows or reasonably should know that the person communicating the material nonpublic information expects that the recipient will maintain its confidentiality."

Here, the record presented on this motion is far from unequivocal as to the nature of the relationship between Dallas and Martin. While they were undoubtedly friends, they had known each other for only a relatively brief period of time (eight months) before the disclosures at issue in the case and the two would sometimes not see each other for months at a time, and not talk by phone or email for weeks at a time. Pappas Decl. Ex. 4 at 23-24. Although the "practice of sharing confidences" referenced in Rule 10(b)(5)-2(b)(2) need not be a function of sharing business

confidences, it is still relevant that Dallas testified that he did not recall ever sharing any confidential "deal" data with Martin other than the information about the SPSS acquisition. *Id.* at 35-36.

In order for summary judgment to be proper, "not only must there be no genuine issue as to the evidentiary facts, but there must also be no controversy regarding the inferences to be drawn from them." *Landino v. Trans Union Credit Information Co.*, 970 F.2d 1110, 1113 (2d Cir. 1992). Here, a reasonable fact finder, viewing the evidence and all reasonable inferences in the light most favorable to Weishaus, could conclude that the SEC had failed to establish beyond genuine dispute that Dallas and Martin had the relationship specified by Rule 10(b)(5)-2(b)(2), let alone that Weishaus knew or reasonably should have known that that was the nature of their relationship.

Accordingly, for the foregoing reasons, the Court by its Order of November 4, 2013, denied the SEC's motion for summary judgment.

Dated:  New York, NY
        December 31, 2013

                                        _____
                                        JED S. RAKOFF, U.S.D.J.

7